UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NOEL S. SAN MIGUEL, JR., | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-10-CV-0766 XR (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| **Defendant.** | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   Honorable Xavier Rodriguez
      United States District Judge

## I. **Introduction**

Plaintiff Noel San Miguel, Jr. seeks review and reversal of the administrative denial of his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") by the Administrative Law Judge ("ALJ") on January 29, 2010.[1]  Plaintiff contends that the ALJ's conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work available in the local and national economies is not supported by the substantial evidence of the record.  For this reason, Plaintiff asks the court to reverse, remand and order the entry of a finding of disability, or, in the alternative, remand the case for proper development.[2]

After considering Plaintiff's brief,[3] Defendant's brief in support of the Commissioner's

---

[1] Docket Entry 1.

[2] Docket Entries 1, 11, and 15.

[3] Docket Entry 11.

decision,[4] Plaintiff's reply brief,[5] the transcript of the Social Security Administration (hereinafter "SSA") proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, it is my recommendation that Plaintiff's request for relief be **GRANTED**, in part, **DENIED**, in part, and the case **REMANDED** for further proceedings consistent with this Report and Recommendation.

I have jurisdiction to enter this Report and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. Jurisdiction

The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383.

## III. Administrative Proceedings

According to the record in this case, Plaintiff fully exhausted his administrative remedies prior to filing this action in federal court. Plaintiff filed applications for DIB and SSI on July 2, 2008, alleging a disability beginning February 7, 2008.[6]  The SSA denied Plaintiff's applications initially, on October 21, 2008,[7] and on reconsideration, December 23, 2008.[8]

On January 29, 2009, Plaintiff requested a hearing before an ALJ.[9]  The hearing was held

---

[4] Docket Entry 14.

[5] Docket Entry 15.

[6] Transcript, at 114-115.

[7] Transcript, at 56-57, 62-71.

[8] Transcript, at 58-59, 72-76.

[9] Transcript, at 77-81.

on November 20, 2009.[10]  Plaintiff was represented by counsel at the hearing.  Plaintiff's attorney

examined and questioned Plaintiff and the vocational expert ("VE"), Howard Marnan, during the

hearing.

At the administrative hearing, Plaintiff testified that he possessed an eighth grade

education and can read and write "a little."[11]  He stated that he had 15 years of past work

experience as a commercial truck driver[12] and stopped working as the result of pain in his

shoulder, ankle, leg and neck.[13]  The Plaintiff said that he took prescription Ibuprofen for

headaches,[14] back and ankle pain,[15] as well as other prescription medications for depression and

diabetes.[16]  When asked about his then-current physical and mental problems, the Plaintiff told

ALJ Morrison that he had "blurry" vision,[17] constant pain in his neck,[18] numbness and tingling in

his fingers, hands, legs and feet,[19] violent thoughts and impulses,[20] and an inability to determine

the force of his grasp, causing him to drop or break things often.[21]  He further testified that he

---

[10] Transcript, at 25-55.

[11] Transcript, at 32.

[12] Id., at 32, 33.

[13] Transcript, at 34, 42.

[14] Transcript, at 36.

[15] Id., at 37.

[16] Id., at 40.

[17] Transcript, at 37.

[18] Id., at 43.

[19] Id., at 45.

[20] Id., at 41.

[21] Id., at 47.

wore a special boot for his ankle,[22] used a non-prescription cane[23] and could only walk approximately one block.[24]

ALJ Morrison also heard testimony from Vocational Expert Howard Marnan at the hearing.[25]  VE Marnan classified Plaintiff's past truck driving work as medium or heavy and semi-skilled with a SVP of 3 or 4 depending on the type of vehicle being driven.[26]  He testified that Plaintiff had no skills transferrable to sedentary work.[27]  ALJ Morrison asked the VE to identify what, if any jobs, were available based on the following hypothetical individual: a man capable of sedentary work with the ability to lift and carry ten pounds, as well as to stand and walk two hours but with mild to moderate hearing loss and the need for limited public contact.[28]  Based on the ALJ's hypothetical, the vocational expert identified the following jobs he believed Plaintiff was capable of performing: hand packager, lens inserter and bench hand.[29]

On January 29, 2010, the ALJ issued his decision in which he concluded that Plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the date of the decision – that is, from the date Plaintiff submitted his application

---

[22] Id., at 38.

[23] Id.

[24] Id., at 47.

[25] Id., at 50-55.

[26] Id., at 50-51.

[27] Id., at 51.

[28] Id.

[29] Transcript, at 52.

through the date of the ALJ's decision.[30]   Specifically, ALJ Morrison found that Plaintiff retained

the RFC to perform work available in the local and national economies.

After receiving the ALJ's unfavorable decision dated January 29, 2010, Plaintiff

requested review of the hearing and decision on March 23, 2010.[31]   On July 27, 2010 , the

Appeals Council concluded that there was no basis upon which it could grant review of the

decision, thereby denying Plaintiff's request.[32]   Plaintiff commenced the instant action in this

court on September 17, 2010.[33]

## IV.  Issue Presented

Whether the ALJ's decision is supported by substantial evidence and comports with

relevant legal standards?

## V.  Analysis

*A.    Standard of Review*

In reviewing the Commissioner's decision denying disability insurance benefits, I am

limited to a determination of whether substantial evidence supports the decision and whether the

Commissioner applied the proper legal standards in evaluating the evidence.[34]   "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."[35]   Substantial evidence

---

[30] Transcript, at 6-20.

[31] Transcript, at 23.

[32] Transcript, at 1-5.

[33] Docket Entry 1.

[34] Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[35] Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)).

"must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[36]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[37]  In my review of the Commissioner's findings, I must carefully examine the entire record, but refrain from re-weighing the evidence or substituting my judgment for that of the Commissioner.[38]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[39]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[40]

1.   Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not reached retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[41]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[36] Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988) (quoting Hames, 707 F.2d at 164).

[37] Martinez, 64 F.3d at 173.

[38] Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995); Villa, 895 F.2d at 1021 ("The court is not to reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner.").

[39] Martinez, 64 F.3d at 174.

[40] Id.

[41] 42 U.S.C. § 423(a)(1).

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[42]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work.[43]

### 2.   Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[44]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[45]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[46]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[47]  The second step involves determining whether the claimant's impairment is severe.[48]  If it is not severe, the claimant is

---

[42] Id. § 1382c(a)(3)(A).

[43] Id.  § 1382c(a)(3)(B).

[44] 20 C.F.R. §§ 404.1520 & 416.920.

[45] Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

[46] 20 C.F.R. §§ 404.1520 and 416.920.

[47] Id.

[48] Id.

deemed not disabled.[49]  In the third step, the Commissioner compares the severe impairment with

those on a list of specific impairments.[50]  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering his age, education, or work experience.[51]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the

demands of his past work.[52]  If he is still able to do his past work, he is not disabled.[53]  If he

cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating

the claimant's ability, given his residual capacities, age, education, and work experience, to do

other work.[54]  If he cannot do other work, he will be found disabled.  The claimant bears the

burden of proof at the first four steps of the sequential analysis.[55]  Once he has shown that he is

unable to perform his previous work, the burden shifts to the Commissioner to show that there is

other substantial gainful employment available that the claimant is not only physically able to

perform, but also, taking into account his exertional and non-exertional limitations, able to

maintain for a significant period of time.[56]  If the Commissioner adequately points to potential

alternative employment, the burden shifts back to the claimant to prove that he is unable to

---

[49] Id.

[50] 20 C.F.R. §§ 404.1520 and 416.920.

[51] Id.

[52] Id.

[53] Id.

[54] Id.

[55] Leggett, 67 F.3d at 564.

[56] Watson  v. Barnhart, 288 F.3d 212, 217 (5th Cir. 2002).

perform the alternative work.[57]

In the instant case, the ALJ reached his decision at step five of the evaluation process.[58] At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful employment since the plaintiff's alleged onset date of disability, February 7, 2008.[59]  The ALJ then concluded at steps two and three that Plaintiff had an impairment or combination of impairments ("traumatic arthritis of the right ankle, diabetes mellitus, obesity, cervical degenerative disc disease, hearing loss, and depression") which were severe, but did not meet or medically equal a listed impairment as of the date the Plaintiff was last insured.[60]  At step four, the ALJ found that the Plaintiff was unable to return to his past relevant work.[61]

At step five, the ALJ held that given Plaintiff's age (defined as a younger individual),[62] education ("an 8th grade 'limited' education"),[63] vocational experience (no transferable skills from previous work)[64] and residual functional capacity, Plaintiff could perform "the sedentary, unskilled jobs of hand packager, lens inserter, and bench hand…."[65]  Based on the foregoing, the ALJ concluded that Plaintiff was not under a disability.[66]

---

[57] Anderson v. Sullivan, 887 F.2d 630, 632-33 (5th Cir. 1989).

[58] Transcript, at 6-20.

[59] Transcript, at 11.

[60] Id.

[61] Transcript, at 17.

[62] Id.

[63] Id.

[64] Id.

[65] Transcript, at 18.

[66] Id.

B.      *Is the ALJ's Decision Supported by Substantial Evidence*?

Plaintiff presents two broad allegations of reversible error.  First, that the ALJ improperly assessed whether Plaintiff's impairments met or medically equaled a listed impairment.[67]  And, second, that the ALJ failed to use the appropriate legal standards in analyzing Plaintiff's subjective complaints of limitation and pain and relating the same to his functional limitations.[68]

1.      *Did the ALJ commit reversible error in deciding that Plaintiff's impairments did not meet or medically equal a Listing?*

Plaintiff's first argument for remand is that the ALJ failed to conclude that Plaintiff's severe ankle impairment met Listing 1.02 and committed reversible error in neglecting to obtain the testimony of a medical expert when deciding the same.[69]  The Commissioner contends that the testimony of a medical expert was not required because the substantial evidence of the record supports the ALJ's conclusion that Plaintiff's ankle impairment did not meet or medically equal the Listing.[70]

In order for a Plaintiff to fulfill his burden of establishing that his severe impairment meets or medically equals a Listing, he must prove that the impairment manifests "*all* the specified medical criteria."[71]  A condition "that manifests only some of those criteria, no matter how severely, does not qualify."[72]

---

[67] Docket Entry 11, at 4-7.

[68] Docket Entry 11, at 7-13.

[69] Docket Entry 11, at 4-7; Docket Entry 15, at 1-5.

[70] Docket Entry 14, at 12-17.

[71] Sullivan v. Zebley, 493 U.S. 521, 530 (1991).  See also id. at 531.

[72] Id., at 530.

Plaintiff has asserted—throughout the administrative process[73] and before this Court[74]—that his ankle impairment meets Listing 1.02, the musculoskeletal impairment, "Major dysfunction of a joint(s)."[75]  This Listing is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.[76]

The regulations define an inability to ambulate effectively as,

> an extreme limitation of the ability to walk, *i.e.* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.[77]

The medical evidence in the record establishes, and the parties agree, that Plaintiff's ankle impairment fulfills the requisite elements of the Listing with the exception of the resulting inability to ambulate effectively.[78]  Plaintiff has the gross anatomical deformity of a fracture with migrating surgical hardware in his right ankle, a major peripheral weight-bearing joint, which has

---

[73] See Transcript, at 29-32.

[74] Docket Entries 11 and 15.

[75] 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 1.02.

[76] Id.

[77] 20 C.F.R. Pt. 404, Subpt P., App. 1, Part A, § 1.00B2b(1).

[78] Docket Entry 11, at 4-7; Docket Entry 14, at 12-17; Docket Entry 15, at 1-4.

resulted in chronic stiffness, pain and limitations in movement.[79]  The parties, however, disagree

on the conclusion that the aforementioned conditions result in Plaintiff's inability to ambulate

effectively as defined by the Regulations.[80]

The medical evidence in the record does not support an irrefutable conclusion on whether

Plaintiff's mobility limitations rise to the level mandated by the Listing.  For example, although

Plaintiff was using a prescription CAM boot to stabilize his ankle at the time of the

administrative hearing,[81] his use of a cane was not prescribed by a physician.[82]  Dr. Franklin, an

internal medicine consultative examining physician, concluded, on the one hand, that Plaintiff

can walk up to two blocks[83] and, on the other, that he "can not heel-to-toe walk well secondary to

ankle fracture."[84]  Some of the medical reports state that the Plaintiff has a "normal range of

motion"[85] and likes to exercise,[86] while others report that Plaintiff is "unable to exercise due to

---

[79] Transcript, at 13-14, 15-16, 183-186, 199, 260-261, 294-295.  See also Docket Entry 11, at 4-7; Docket Entry 14, at 12-17; and Docket Entry 15, at 1-4.

[80] Docket Entry 11, at 4-7; Docket Entry 14, at 12-17; Docket Entry 15, at 1-4.

[81] See Report of Dr. Ramanujam, dated September 1, 2009, Transcript, at 260-262, 294-296.

[82] Transcript, at 38.  The required, continuous use of a medically prescribed cane might be sufficient to establish an inability to ambulate, as defined by the regulations, because it could prohibit "independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00B2b(1).

[83] Transcript, at 184.

[84] Transcript, at 185.  See Note 20 C.F.R. Pt. 404, Subpt. P., App. 1, §1.00B2b(2) (providing that an example of an inability to ambulate effectively includes "the inability to walk a block at a reasonable pace on rough or uneven surfaces….").

[85] Transcript, at 201, 236, 247.

[86] Transcript, at 260, 294.

12

his chronic pain"[87] and experiences pain that is "very unbearable."[88]

The Fifth Circuit has made it clear that the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our judgment for that of the Secretary, even if the evidence preponderates against the Secretary's decision."[89]  However, it has also cautioned ALJs against the impulse to "play doctor:"

> 'But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor….The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them.  Common sense can mislead; lay intuitions about medical phenomena are often wrong.'[90]

Because an ALJ is not a medical expert and may not substitute his own conclusions for medical opinion, the SSA promulgated a Ruling which specifically requires an ALJ to have a medical expert review and assess the medical evidence of the record as it pertains to the issue of whether a plaintiff's impairment meets or medically equals a Listing.[91]  To that end, an ALJ must obtain the opinion of a medical expert when, *inter alia*,

> additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.[92]

---

[87] Transcript, at 267, 301.

[88] Transcript, at 260, 294.

[89] Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir. 1988), *citing* 42 U.S.C. § 405(g).

[90] Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003), *quoting* Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990).

[91] Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, SSR 96-6p (hereafter "SSR 96-6p").

[92] SSR 96-6p, at *4.

In this case, the ALJ included a significant discussion of the Plaintiff's ankle impairment and ambulatory capabilities in his decision.  He ultimately concluded that Plaintiff's ankle condition, while severe, did not meet or medically equal Listing 1.02.[93]  In so doing, he relied upon the medical reports in the record, including those of Dr. Siddiqul from University Health System (dated April 10, 2009),[94] Radiologist Dr. Blumhardt (dated September 1, 2009)[95] and Podiatrist Dr. Ramanujam (dated September 1, 2009).[96]  These reports include the findings that Plaintiff appeared to have his osteoarthritis under control by taking prescription Ibuprofen,[97] but also that some of the hardware in Plaintiff's ankle "migrated from its original site" and was "probably fractured,"[98] as well as that Plaintiff walked with a limp.[99]  The State Agency Medical Examiners, Dr. Jimmy Breazeale and Dr. Kavitha Reddy, issued disability determinations on October 21, 2008,[100] and December 19, 2008,[101] respectively.  Therefore, they were unable to provide their expert medical assessment of these medical findings.  Because the ALJ relied, in part, on these additional pieces of medical evidence in concluding that Plaintiff's ankle impairment was "not equivalent in severity to any impairment in the Listing of Impairments," he

---

[93] Transcript, at 9-20.

[94] Transcript, at 13, *citing* Transcript, at 273, 307.

[95] Transcript, at 13, *citing* Transcript, at 282, 316.

[96] Transcript, at 13, 15-16, *citing* Transcript, at 260-61, 294-95.

[97] Transcript, at 273.

[98] Transcript, at 282, 316.

[99] Transcript, at 261, 295.

[100] Transcript, at 56-57.

[101] Transcript, at 58-59.

was required to "obtain an updated medical opinion from a medical expert...."[102]  Instead, the

ALJ substituted his own lay interpretations about these medical facts for medical expertise which

constitutes reversible error.[103]  For this reason, Plaintiff's request for relief should be **<u>GRANTED</u>**

with the order that the case be **<u>REMANDED</u>**.  On remand, the Administrative Law Judge should

be ordered to obtain the testimony of a medical expert as to the effect these medical reports have

on the conclusion that Plaintiff's ankle impairment does not meet or medically equal Listing

1.02.

At the very end of the brief asserting the first point of error, Plaintiff further contends

that, because the ALJ "found several other severe disorders...1.02A, 1.00Q and 12.04 should

have been considered, in combination.  The ALJ should have sought a medical opinion to

properly assess the claim at Step 3."[104]  Plaintiff omits any citations to the record in support of

this proposition.

This Court has already reached the conclusion that the ALJ committed reversible error by

failing to obtain updated medical expert testimony with respect to Plaintiff's ankle impairment

and Listing 1.02A, the musculoskeletal disorder involving major dysfunction of a joint.  Listing

1.00Q discusses the medically determinable impairment, obesity.  1.00Q provides:

> Obesity is a medically determinable impairment that is often associated with disturbance
> of the musculoskeletal system, and disturbance of this system can be a major cause of
> disability in individuals with obesity.  The combined effects of obesity with
> musculoskeletal impairments can be greater than the effects of each of the impairments
> considered separately.  Therefore, when determining whether an individual with obesity
> has a listing-level impairment or combination of impairments, and when assessing a

---

[102] SSR 96-6p, at *3-4.

[103] <u>Frank</u>, 326 F.3d at 622, *quoting* <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 118 (7th Cir. 1990).

[104] Docket Entry 11, at 7.

claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.[105]

The evidence in the record clearly establishes that Plaintiff suffers from obesity.[106]  In fact, the ALJ concluded, at step two of the sequential evaluation process, that obesity was one of Plaintiff's severe impairments.[107]  The ALJ noted in the body of the decision that Plaintiff's "obesity contributes to his problems with joint pain and diabetes mellitus."[108]  However, in assessing whether Plaintiff's impairments—individually or in combination—met or medically equaled a Listing at step three, the ALJ failed to include Plaintiff's obesity in his analysis.[109]  In light of the Regulations' requirement to consider the combined effects of an obesity impairment with a musculoskeletal impairment, the ALJ's omission of the same constitutes reversible error.[110]  It is my recommendation that, on remand, the ALJ be directed to ask the medical expert about the combined effects of Plaintiff's obesity and musculoskeletal impairments and whether those impairments, in tandem, qualify for a Listing.

Plaintiff also argued that, if considered in combination with his obesity and musculoskeletal impairments, his severe mental impairment might have qualified for Listing 12.04 (affective disorders).[111]  The ALJ fully considered the effects of Plaintiff's depression

---

[105] 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 1.00Q.

[106] Transcript, at 11.

[107] Id.

[108] Transcript, at 15.

[109] Transcript, at 11.

[110] See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q.

[111] 20 C.F.R. Pt. 404, Subpt P, App. 1 § 12.04 ("*Affective disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.").

during the sequential evaluation process[112] and included a thorough discussion of the same in his

decision.[113]   In addition, he included limitations in his assessment of Plaintiff's RFC based on

Plaintiff's depression.[114]   His consideration of Plaintiff's depression was supported by the

substantial evidence of the record.   Moreover, the medical evidence in the record establishes that

Plaintiff's depression was well controlled when he took his prescription Paxil medication.[115]

Impairments that are controlled by medication are not disabling.[116]   Therefore, the ALJ did not

commit reversible error in his assessment of Plaintiff's depression.

2.      *Did the ALJ fail to use the appropriate legal standard in analyzing Plaintiff's
        subjective complaints of limitation and pain?*

Plaintiff's second assertion of error is that the ALJ failed to perform properly the

assessment of Plaintiff's credibility and subjective allegations of pain and limitation.[117]

Specifically, Plaintiff contends that the ALJ committed reversible error in failing to perform the

credibility analysis as outlined in the applicable Rulings and Regulations.   Had the ALJ

appropriately considered Plaintiff's subjective complaints of pain and manipulative limitations in

his upper extremities, Plaintiff contends that the ALJ would have concluded that Plaintiff did not

retain the RFC to perform any jobs available in the local and national economies, let alone the

---

[112] Transcript, at 11 (finding that Plaintiff's depression was one of his severe impairments but did not meet or medically equal Listing 12.04).

[113] Transcript, at 11-12.

[114] Transcript, at 12.

[115] Transcript, at 263, 265.  See also Transcript, at 16.

[116] Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").  See also Fraga v. Bowen, 810 F.2d 1296, 1305 (5th Cir. 1987), citing James v. Bowen, 793 FF.2d 702, 706 (5th Cir. 1986); Barajas v. Heckler, 738 F.2d 641, 644 (5th Cir. 1984).

[117] Docket Entry 11, at 9.

jobs of hand packager, bench worker or lens inserter.[118]  In response, Defendant asserts that the record as a whole, including the objective medical evidence, Plaintiff's cessation of work for non-medically related reasons, Plaintiff's failure to obtain treatment for his impairments before filing for benefits, and the failure of any physician to label Plaintiff disabled, supports the ALJ's credibility determination and related assessment of Plaintiff's RFC.[119]

Social Security Ruling 96-7p explains in detail the requisite elements for an ALJ's credibility analysis as outlined in 20 C.F.R. § 404.1529.[120]  The Ruling makes it clear that the ALJ must not only perform a thorough analysis of the Plaintiff's credibility but must also expressly articulate his findings and conclusions regarding the same in the decision.[121]

The credibility evaluation is a two step process.[122]  In the first step, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms."[123]  Once an underlying physical or mental impairment has been identified,

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the

---

[118] Docket Entry 11, at 9-13; Docket Entry 15, at 5-6.  Both parties significantly discuss the particular jobs identified by the VE, and accepted by the ALJ, as work Plaintiff was capable of performing.  For the reasons which follow, including the need for the ALJ to re-assess the Plaintiff's credibility in light of the correct legal standard and the likely re-formulation of Plaintiff's RFC thereafter, these arguments need not be considered in exquisite detail.  See Docket Entry 11, at 11-13; Docket Entry 14, at 8-12; and Docket Entry 15, at 4-6.

[119] Docket Entry 14, at 4-6.

[120] Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p (July 2, 1996) (hereafter, "SSR 96-7p").

[121] SSR 96-7p at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement….").

[122] SSR 96-7p at *2.

[123] Id.

18

individual's ability to do basic work activities.[124]

In assessing the Plaintiff's credibility, the ALJ is directed to consider the following, in addition to the objective medical evidence:

1.    The individual's daily activities;
2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.    Factors that precipitate and aggravate the symptoms;
4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[125]

Both parties agree that the ALJ properly performed the first part of the credibility assessment.[126]

Notably, Defendant asserts that the ALJ's decision comports with the parameters outlined in Vaughan v. Shalala.[127]  In Vaughan, the Fifth Circuit upheld the ALJ's decision that Ms. Vaughan was able to perform the full range of sedentary work (and was, therefore, not disabled), finding, in pertinent part, that the Plaintiff was: (1) previously able to work in spite of impairments she alleged to be disabling; (2) never "pronounced" disabled by any examining physician; (3) never advised to limit her activities by any physician; and (4) capable of

---

[124] SSR 96-7p at *2.

[125] SSR 96-7p at *3, *quoting* 20 C.F.R. § 404.1529(c)(3).

[126] See Docket Entry 11, at 9.  See also Transcript, at 13, wherein the ALJ concludes, "the claimant's medically determinable impairments could reasonably be expected to produce the symptoms he alleges…."

[127] Vaughan v. Shalala, 58 F.3d 129 (5th Cir. 1995).  See also Docket Entry 14, at 6.

"perform[ing] household chores like cooking, making the bed, and washing."[128]  Importantly, however, the analysis proffered in Vaughan was directed to the question of whether the ALJ's decision was supported by the substantial evidence of the record, not whether the ALJ complied with the appropriate legal standard for assessing plaintiff Vaughan's credibility.[129]  The ALJ must first apply the correct legal standard before the court can consider whether the decision is supported by the substantial evidence of the record.

In this case, according generous deference and inferences to the entirety of the ALJ's decision, he touched on only three of the seven factors when assessing the credibility of Plaintiff's complaints of arm and neck pain, numbness and tingling, as well as the alleged manipulative limitations resulting from the same.[130]  Specifically, the ALJ discussed Plaintiff's daily activities;[131] the "type, dosage, effectiveness, and side effects of any medication…taken to alleviate pain or other symptoms;"[132] and the"[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms."[133]

The only evidence discussed that addressed Plaintiff's daily activities is the ALJ's mention of Plaintiff's treating physician's statement that Plaintiff was "active and likes to

---

[128] Vaughan, 58 F.3d at 131.

[129] Id.

[130] Notably, the ALJ cited the appropriate legal standards, 20 C.F.R. § 404.1529 and 96-7p in the decision. Transcript, at 12.

[131] 20 C.F.R. § 404.1529(c)(3)(i).  See also SSR 96-7p at *3.

[132] 20 C.F.R. § 404.1529(c)(3)(iv).  See also SSR 96-7p at *3.

[133] 20 C.F.R. § 404.1529(c)(3)(v).  See also SSR 96-7p at *3.

20

exercise."[134]   The ALJ also noted that Plaintiff took Ibuprofen for his pain.[135]   And, in a possible

nod to the "treatment…received" criterion mention in 20 C.F.R. § 404.1529(c)(3)(v), the ALJ

observed that there are neither records of medical treatment dated before Plaintiff applied for

benefits nor an explicit statement by any physician that Plaintiff was disabled or unable to

perform work activities.[136]

Aside from neglecting to consider the remaining factors outlined in SSR 96-7p and in the

Regulation, the ALJ failed to mention—let alone analyze—any of the subjective evidence in the

record that Plaintiff's arm and neck pain, numbness and tingling caused him manipulative

limitations.   There are three reports in the record in which Plaintiff specifically mentioned the

interference the aforementioned had on his daily activities, such as the inability to hold and serve

beverages,[137] the inability to lift more than one pound,[138] and the inability to wash or comb his

hair, put on shoes and socks, or tie his shoelaces.[139]   Furthermore, the Plaintiff raised the very

issue of his manipulative limitations at the administrative hearing when he testified that he was

unable to cook food or wash dishes.[140]   None of these statements are mentioned by the ALJ in his

---

[134] Transcript, at 16. While there is evidence that Plaintiff is able to exercise (Transcript, at 260, 294), there is also contradictory evidence in the record that Plaintiff is unable to exercise as the result of pain (Transcript, at 267, 301).  The ALJ also noted that Plaintiff stopped working for reasons other than his physical limitations.  Transcript, at 16-17.

[135] Transcript, at 14.

[136] Transcript, at 16-17.

[137] Transcript, at 175.

[138] Transcript, at 172.

[139] Transcript, at 165.

[140] Transcript, at 47.

assessment of the credible nature of Plaintiff's alleged manipulative limitations.[141]

The ALJ focused on the first step of the credibility analysis—whether there was objective evidence of "an underlying medically determinable physical or mental impairment…that could reasonably be expected to produce the individual's pain or other symptoms"[142]—but failed to consider adequately the requisite factors in the second prong of the analysis—"evaluat[ing] the intensity, persistence, and limiting effects of the individual's symptoms"[143] via a thorough analysis of the criteria outlined in § 1529(c).[144]  Had the ALJ properly performed the assessment of Plaintiff's credibility as mandated by SSR 96-7p and § 1529(c), he may have determined that Plaintiff's manipulative limitations impacted his residual functional capacity.  A different conclusion regarding Plaintiff's residual functional capacity would almost certainly have resulted in a different conclusion as to what, if any, jobs in the local and national economies Plaintiff could perform.[145]  Therefore, it is my recommendation that Plaintiff's request for relief be **GRANTED** and this action **REMANDED** with the instruction that the ALJ properly assess the credibility of Plaintiff's allegations of pain and manipulative limitations.  If the credibility assessment results in a different formulation of the Plaintiff's RFC, the ALJ should obtain the

---

[141] The ALJ stated that Plaintiff "also has other musculoskeletal complaints that are not supported by objective evidence.…" but this statement is conclusory and insufficient to comply with the requirements set forth in the applicable Ruling and Regulations, as discussed, above.  Transcript, at 14.

[142] See SSR 96-7p at *2.  See also Transcript, at 14.

[143] Id.

[144] SSR 96-7p at *3; 20 C.F.R. § 404.1529(c).

[145] The vocational expert testified at the hearing that the jobs he identified (lens inserter, hand packager and bench hand)—which were accepted by the ALJ in his decision and finding that Plaintiff was not disabled—"are representative of the sedentary type jobs using both hands, assembly type, or bench type work."  Transcript, at 52. If, on remand, the ALJ includes some manipulative limitations in his RFC assessment, he will likely also find that Plaintiff cannot perform the jobs identified by the vocational expert.

testimony of a vocational expert, if needed, to identify jobs available in the local and national economies which Plaintiff can perform.

Plaintiff has further argued that the ALJ improperly relied on the testimony of the vocational expert in identifying jobs the Plaintiff retained the RFC to perform when those same jobs, as listed in the Dictionary of Occupational Titles, are beyond Plaintiff's mental and physical capabilities as identified by the ALJ.[146]   Defendant contends that Plaintiff's alleged manipulative limitations were neither found credible by the ALJ nor supported by the substantial evidence in the record.[147]   Therefore, the ALJ properly declined to include those limitations in his hypothetical to the vocational expert or his assessment of Plaintiff's RFC.[148]   Defendant further claims that it is appropriate for the ALJ to accept the testimony of a vocational expert, even if it conflicts with the Dictionary of Occupational Titles.   For these reasons, Defendant asserts the ALJ did not commit reversible error in his finding that Plaintiff was capable of performing the jobs identified by the vocational expert.

Before the ALJ can determine which, if any, jobs available in the local or national economies Plaintiff can perform, he must first formulate the Plaintiff's RFC.   In this case, the failure to consider properly Plaintiff's allegations of pain and limitation more likely than not resulted in a flawed assessment of Plaintiff's RFC.   Thus, any arguments regarding the disparity

---

[146] Docket Entry 11, at11-13.  In his initial brief, Plaintiff argued that the bench work job, which required a reasoning level of 2, was necessarily inconsistent with the finding that Plaintiff could perform only simple, repetitive work.  Docket Entry 11, at 12.  Defendant properly noted that Plaintiff failed to provide any support for said proposition.  Docket Entry 14, at 10.  Plaintiff appears to have abandoned this particular claim in his Reply and focuses, instead, on the disparity between the physical requirements for the jobs identified by the vocational expert and Plaintiff's manipulative limitations.  See Docket Entry 15, at 4-6.

[147] Docket Entry 14, at 9.

[148] Docket Entry 14, at 10.

between the mental and exertional requirements of jobs as listed in the Dictionary of Occupational Titles and as identified by the vocational expert are unavailing.[149]  It is my recommendation that this case be remanded on other grounds which will very likely eliminate this issue.

Finally, at the very end of his brief Plaintiff also alleged that the ALJ "failed to consider the effects of San Miguel's visual limitation on his RFC."[150]  The medical and subjective evidence in the record establishes that Plaintiff has some visual issues, specifically that Plaintiff occasionally experiences blurry vision.[151]  In addition, the vocational expert opined that Plaintiff would be unable to maintain employment if the visual "limitation was severe enough so that [Plaintiff] wasn't able to do minimum production."[152]  The medical records establish, however, that Plaintiff's vision was correctable to 20/20.[153]  Therefore, the ALJ properly declined to include Plaintiff's visual limitations in his assessment of Plaintiff's RFC.[154]  Plaintiff has failed to establish reversible error on this point.

---

[149] Defendant is correct that the Fifth Circuit has concluded that an ALJ can properly rely on the vocational expert's testimony, "provided that the record reflects an adequate basis for doing so," to resolve "any implied or indirect conflict between the vocational expert's testimony and the DOT…."  Carey v. Apfel, 280 F.3d 131, 146 (5th Cir. 2000).  This conclusion is not universal among the Courts of Appeals.  See Burns v. Barnhart, 312 F.3d 113, 127, fn. 8 (3rd Cir. 2002), citing Smith v. Shalala, 46 F.3d 45, 47 (8th Cir. 1995).

[150] Docket Entry 11, at 12.  Plaintiff indicates that his blurred vision may be the result of uncontrolled diabetes and borderline glaucoma.  See Id.  See also Transcript, at 239, 240, 260-61, 266, 268, 271 & 277-78, wherein the medical reports document Plaintiff's diabetes.  One report even concludes that Plaintiff's diabetes was controlled by diet.  Transcript, at 260-61.

[151] Transcript, at 34, 136, 260, 270, 287-88 & 289.

[152] Transcript, at 53.

[153] Transcript, at 287.  See also Transcript, at 288-293 & Transcript, at 15, wherein the ALJ uses these medical findings as the basis for his conclusion on Plaintiff's alleged visual limitations.

[154] Lovelace, 813 F.2d at 59 ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").

## VI.  <u>Recommendation</u>

Based on the foregoing, I recommend that Plaintiff's request for relief be **<u>GRANTED</u>**, in part, and **<u>DENIED</u>**, in part and the case **<u>REMANDED</u>** for further proceedings consistent with this Report and Recommendation.

## VII. <u>Instructions For Service And Notice of Right to Object/Appeal</u>

The United States District Clerk shall serve a copy of this Report and Recommendation on each and every party either (1) by certified mail, return receipt requested, or (2) by facsimile if authorization to do so is on file with the clerk.  According to Title 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), any party who desires to object to this report must serve and file written objections to the Report and Recommendation within 14 days after being served with a copy unless this time period is modified by the district court.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties.**  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a <u>de novo</u> determination by the district court.[155]  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation within 10 days after being served with a copy

---

[155] <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 149-52 (1985).

shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the

unobjected-to proposed factual findings and legal conclusions accepted by the district court.[156]

**SIGNED** on February 6, 2012.

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[156] <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).